Evan C. Nelson, Esq. (SBN 172957)
LAW OFFICE OF EVAN C. NELSON
1261 Locust Street, No. 191
Walnut Creek, CA  94596-4509
Tel:  925-247-8992
Email:  evancnelson.law@gmail.com
*Attorneys for Plaintiff Daniel Alweiss*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **DANIEL ALWEISS,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SACRAMENTO; MARIO LARA; SHANNON BROWN; CHRIS CONLIN; UNNAMED CITY OF SACRAMENTO POLICE OFFICERS NOS 1-3; LARRY K. JOYNER;  ST. PAUL CHURCH OF GOD-CHRIST; FIRST STEP COMMUNITIES-THE GROVE; PG&E; and DOES 1-25,**<br><br>Defendants, | Case No. _____<br><br>COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL<br><br>**1.  Viol. of Fourteenth Amendment-<br>        Equal Protection<br>2.  Viol. of Fourteenth Amendment-<br>        State Created Danger-Delib. Indiff.<br>3.  Violation of Procedural Due Process<br>4.  Violation of Substantive Due Process<br>5.  Violation of Privileges and Immunities<br>6.  First Amendment Retaliation<br>7.  Viol. of Fourth Amendment-<br>        Unreasonable Seizure<br>8.  Viol. of Fifth Amendment-Taking<br>        Without Just Compensation<br>9.   Inverse Condemnation<br>10. Dangerous Cond. of Public Property<br>11. Nuisance – Private<br>12. Nuisance – Public (Civ. Code, §3493)<br>13. Negligence-Government Defendants<br>14. Negligence-Non-Governmental<br>        Defendants-Premises Liability<br>15. Breach of Mandatory Duty<br>16. Declaratory Judgment** |

## INTRODUCTION

Johnston Park is a city park in the City of Sacramento, which has been turned into squalor housing, with severe blight and toxic nuisance conditions, over the last 3 years in direct violation of the Municipal Code, and many other laws.

1

Trash, open fires, burned-out cars, dis-assembled cars, explosions, violent vagrancy, open sewage, raw trash, drug use, drug dealing, heroin needles, stolen property, fuel, oil, toxic utility poles, and fixed residential structures have been open, known and continuous conditions, from as people living in this park, and adjacent open area, for the last 3+ years.  All Defendants know this, and all of it violates the Sacramento Municipal Code, as well as many other laws.

CITY DEFENDANTS do not tolerate this in other City Parks or land they own, but intentionally treat the once beautiful Johnston Park, and related open areas, as a containment area for blight, squalor, violent vagrancy, drug addicts, and psychiatric residents.

Defendants created an apocalypse in this park, it harms the majority black and brown neighbors on Eleanor Avenue, damages Plaintiff and his abutting parcel, and destroyed Plaintiff's ability to develop his lot for its intended purpose.

Defendants ignore the reality they created, and resulting harm.  CITY OF SACRAMENTO has a $1.3 billion annual budget but uses Johnston Park as a free open-air residential camping facility in squalor, for its unwanted drug addicts, psychiatric impaired residents, vagrants and homeless residents; at the expense of the adjacent working class neighborhood and Plaintiff.

**PARTIES**

1.     Plaintiff Daniel Alweiss, is a resident of the State of California and owner of the 2.35 acre parcel at 245 Eleanor Avenue, within the City of Sacramento (PLAINTIFF'S PARCEL).

2.     Defendant City of Sacramento, is a municipal corporation, under the laws of the State of California, and which is located within this Court's Eastern District.  It also represents itself to be a "person," for application of State of California law, in this Court.  See, *City of Sacramento v. Wells Fargo & Co*., USDC-Eastern Dist., Case No. 2:18-cv-00416-KJM-AC, 50:10-12 (2018).  For purposes of section 1983, all allegations against it are based on execution of its policy or custom from which Plaintiffs have suffered injury, and is considered a "person," under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 688,694(1978). Defendant City of Sacramento owns Johnston Park, Eleanor Avenue, and approximately 6 feet of frontage along Eleanor Avenue in front of Plaintiff's Parcel, and all land bordering Plaintiff's Parcel immediately east and north.

2

3.     Defendant Mario Lara, is the Director of City of Sacramento Parks Department, such department is formally identified as Youth, Parks and Community Enrichment Department, for the City of Sacramento (City Parks).

4.     Defendant Shannon Brown, is the Interim Director of City Parks.

5.     Defendant Chris Conlin, is the Assistant City Manager responsible for management of City Parks, for the City of Sacramento.

6.     Defendants UNNAMED CITY OF SACRAMENTO POLICE OFFICERS NOS. 1-3 are three City of Sacramento Police officers whose true identities are known to the City of Sacramento.  These officers broke into Plaintiff's secured lot on the evening of May 23, 2021, and this complaint will be amended to name their true names in later DOE-amendments.

7.     Defendant Larry K. Joyner owns and/or operates one or more open lots adjacent to the park, abutting its eastern border, and where squalor housing and its related nuisances have been an open and obvious condition for the last 3+ years.

8.     Defendant St. Paul Church of God-Christ owns and/or operates one or more open lots adjacent to the park, abutting its eastern border, and where squalor housing and its related nuisances have been an open and obvious condition for the last 3+ years.

9.     First Step Communities-The Grove owns and/or operates one or more open lots adjacent to the park, abutting its eastern border, and where squalor housing and its related nuisances have been an open and obvious condition for the last 3+ years, and /or creates squalor conditions in Johnson Park.  Defendants Larry K. Joyner, St. Paul Church of God-Christ, First Step Communities-The Grove shall be referred to collectively as "CHURCH DEFENDANTS."

10.     PG&E owns the curtilage open area along the southern border of Johnston Park, and where squalor housing and its related nuisances have been an open and obvious condition for the last 3+ years.

11.     At all times herein mentioned, Defendants, and each of them, were the supervisors, agents, servants, employees, and joint venturers of each of the remaining Defendants, and were at all times herein mentioned acting within the course, scope, and purpose of said agency, employment, business, and joint venture.

1    12.    To the extent conduct and omissions alleged herein were perpetrated by one or more

2    of the defendants, the remaining defendants confirmed and ratified said conduct and omissions.

3    All allegations made in this complaint to any act or omission on the part of a defendant or

4    defendants shall also be deemed to refer to the act and/or omission of each Defendant. At all

5    relevant times, Defendants and each of them were the knowing agents and/or alter egos of one

6    another.

7    13.    Defendants and each of their officers, directors and managing agents directed,

8    approved and/or ratified the conduct of each and of their co-defendants, agents and employees, as

9    is more fully alleged herein.

10                                    **JURISDICTION**

11    14.    This action arises under Title 42 of the United States Code, Sections 1983.

12    Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and

13    1343 under federal question jurisdiction.  This Court has supplemental jurisdiction over

14    California state-law claims brought in this case pursuant to 28 U.S.C. section 1367.  The unlawful

15    acts and practices alleged herein occurred in the City of Sacramento, which is within this judicial

16    district.

17                                      **VENUE**

18    15.    Plaintiff owns real property in this district and was harmed in this district.  The basis

19    of this claim arose in this district, Defendant City of Sacramento, is a municipal corporation

20    within this district, and all Defendants are employed in this district and/or engaged in actions

21    giving rise to this case within this district.  Venue is proper in the Eastern District.

22                                      **FACTS**

23    16.    On January 15, 2016, Plaintiff purchased APN: 263-0110-036 ("PLAINTIFF'S

24    PARCEL") for valuable consideration.  A Grant Deed conveying this parcel to Plaintiff was filed

25    with the Sacramento County Recorder's Office on January 15, 2016.

26    17.    On February 17, 2016, Plaintiff sent a letter to CITY OF SACRAMENTO expressly

27    advising it of the borders of his lot, and objecting to the CITY OF SACRAMENTO's trespass

28    onto his land.  On February 19, 2016, Plaintiff emailed the CITY OF SACRAMENTO a complete

4

1   topographic survey of PLAINTIFF'S PARCEL.  From February 19, 2016 to the current, the

2   CITY OF SACRAMENTO has had actual knowledge of the topographic survey for

3   PLAINTIFF'S PARCEL, its related property boundaries, and actual knowledge that the area

4   directly behind PLAINTIFF'S PARCEL is CITY OF SACRAMENTO's Johnston Park property.

5   CITY OF SACRAMENTO has actual knowledge the abutting land behind PLAINTIFF'S

6   PARCEL (immediately north) is Johnston Park property.

7        18.  Shortly before June 10, 2018, Plaintiff observed the CITY OF SACRAMENTO

8   digging into his property and attempting to install new water lines.  Plaintiff promptly objected in

9   an email to CITY OF SACRAMENTO employees on June 10, 2018.  On June 22, 2018, Plaintiff

10  met with CITY OF SACRAMENTO employees and showed them the topographic survey of

11  PLAINTIFF'S PARCEL and indicated the CITY OF SACRAMENTO was trespassing onto his

12  lot, and expressly physically showed them the area directly behind PLAINTIFF'S PARCEL is

13  CITY OF SACRAMENTO's Johnston Park property.  Plaintiff asserted his private property

14  rights.

15       19.  On March 15, 2019, Plaintiff submitted a Conditional Use Permit application with the

16  CITY OF SACRAMENTO's Community Development Department (Planning Department), to

17  build an assisted living facility for low-income seniors.  As part of this process, plaintiff

18  submitted a site plan showing the site and location of the building on his property.  The Planning

19  Department then solicited input from other City departments on the site plan.

20       20.  On April 19, 2019, the CITY OF SACRAMENTO asserted they have various

21  trespassing pipes running through PLAINTIFF'S PARCEL without consent or privilege, or any

22  valid easement.  The CITY OF SACRAMENTO demanded Plaintiff grant it an easement for its

23  offending pipes, without compensation.  In response, Plaintiff asserted his Constitutional rights.

24       21.  The CITY OF SACRAMENTO has written Plaintiff informing him that Eleanor

25  Avenue from in front of his property and running through the remainder of the park is not a

26  public right of way, and is City Park property.  CITY OF SACRAMENTO indicated to Plaintiff

27  that he would have to negotiate for access to Eleanor Avenue.  Plaintiff objected, asserted his

28  legal right of access to Eleanor Avenue, and indicated he would not pay for access to the road.

22.   From 2018 to the current, City Parks has allowed squalor residential structures on its Johnston Park property along the rear border with PLAINTIFF'S PARCEL, and along Eleanor Avenue, within Johnston Park, and have knowingly allowed the severe blight and nuisance conditions in Johnston Park.

23.   From 2018 to the current, Defendants Larry K. Joyner, St. Paul Church of God-Christ, First Step Communities-The Grove (collectively "CHURCH DEFENDANTS") and Defendant PG&E have knowingly and intentionally allowed squalor residential structures, with vagrancy, fires, trash, sewage, burned-out vehicles, vehicle and trailer parking, fetid conditions, severe blight and nuisance conditions on their open-space property along the borders of Johnston Park.  CHURCH DEFENDANTS and PG&E have actual knowledge of these conditions on their property and/or their curtilage for which they are responsible.

24.   Plaintiff and his neighbors have notified City of Sacramento Police, City Park Rangers, City Park maintenance workers, and the City of Sacramento 311 Center many times of the squalor residential structures on its Johnston Park property along the rear border with PLAINTIFF'S PARCEL, and along Eleanor Avenue, within Johnston Park, and of the severe blight and nuisance conditions in Johnston Park.

25.   City of Sacramento Police, City Park Rangers, City Park maintenance workers, and the City of Sacramento 311 Center have actual knowledge of the squalor residential structures on its Johnston Park property along the rear border with plaintiff's parcel, and along Eleanor Avenue, within Johnston Park, and of the severe blight and nuisance conditions in Johnston Park.

26.   The CITY OF SACRAMENTO's response to Plaintiff and his neighbors' complaints for allowing Johnston Park to remain squalor residential housing, with severe blight and nuisance conditions is as follows:

a.  2018 to 2020:  "Rents are high these people have no place to go," and "there needs to be more than 8 people living together," so we are not going to do anything.

b.  2020-2021:  "It's Covid we can't do anything," so we are not going to do anything.

c.  Current:  "It's not Park property," so we are not going to do anything.

6

1    Plaintiff and his neighbors received some form of the above excuses from the CITY OF

2    SACRAMENTO to their many complaints over the last 3 years.

3        27.    Of all the residents on Eleanor Avenue, 90+ percent are either African American

4    (black), Latino (brown), or undocumented.  The over-whelming majority of them have

5    complained to the City of Sacramento about the squalor housing, severe blight and nuisance

6    conditions in Johnston Park over the last 3+ years.

7        28.    Of all the people who used Johnston Park in its pre-squalor condition, 95% of park

8    users were either black or brown.  The majority of residents in the area who previously used

9    Johnston Park in its pre-squalor condition, no longer go to the park, in its current state.

10       29.    Defendants have actual notice of these conditions on their property, all of them know

11   it is a nuisance and none of them do anything about it.

12       30.    CITY OF SACRAMENTO intentionally treats Johnston Park as a *de facto* residential

13   facility for its drug addicts and/or psychiatrically impaired people to live, in an open-air

14   environment.  However, CITY OF SACRAMENTO provides no running water, electricity,

15   bathing facilities, toilets, trash, security, sanitary conditions, social services, medical services,

16   drug counseling, or any psychiatric care to these people.  These people live in squalor in Johnston

17   Park, and CITY OF SACRAMENTO knows it.  The open sewage and fetid trash in the park is a

18   toxic condition, which is open to park patrons and to children in the park.

19       31.    Squalor residents living in Johnston Park, and the adjacent open private property on

20   its borders, regularly defecate, urinate, bath, and burn items on the park.  And they have been

21   doing so continuously, since 2018.  These squalor residents regularly create open sewage, and

22   fetid trash in the park.  The stench from the squalor residents living in Johnston Park is

23   overwhelming to Plaintiff and his workers when they are on PLAINTIFF'S PARCEL.

24   Additionally, squalor residents living in Johnston Park run electric generators continuously and

25   burn toxic items which impairs Plaintiff's ability to breath, and have damage Plaintiff's health.

26       32.    In 2018, Plaintiff requested CITY OF SACRAMENTO remove approximately 10

27   toxic utility poles lying on the ground, behind PLAINTIFF'S PARCEL and on Johnston Park

28   property.  These logs are believed to contain pentachlorophenol, which dramatically increases the

7

1    risk of cancer in children who use the park. Additionally, this is a clear, open and obvious fire

2    hazard, and has been so for the last 5 years. The City of Sacramento Fire Marshal appears to

3    ignore this fire hazard on city property, but surprisingly pays attention to fire hazards on

4    PLAINTIFF'S PARCEL, less than 10 feet away.

5        33.    Plaintiff has been attacked four times by armed squalor residents living in Johnston

6    Park, and its two open areas on its borders. Plaintiff and/or others notified the City of Sacramento

7    Police on each of these occasions. As a result, Plaintiff has suffered emotional distress and

8    diminished value of his land and inability to build an assisted living facility for low-income

9    seniors, as he had planned.

10       34.    CITY OF SACRAMENTO, Mario Lara, as Director of City of Sacramento Parks

11   Department, Shannon Brown Interim City Parks Director, Chris Conlin, as the Assistant City

12   Manager responsible for management of City Parks, and additional unnamed City Park

13   administrators and individuals in management, all of whom having been sued herein as DOES 1-

14   20, had and continue to have, actual knowledge of the squalor residences living in Johnston Park,

15   and of the severe blight and toxic nuisance conditions in Johnston Park. These Defendants have a

16   pattern and practice of intentionally treating Johnston Park differently than other parks in the City

17   of Sacramento, either intentionally to treat black and brown residents who use the park and live

18   on Eleanor Avenue differently, or have implemented policies and procedures which cause a

19   disparate impact on such individuals.

20       35.    Defendants Mario Lara, Shannon Brown, Chris Conlin, and additional unnamed City

21   Park administrators and individuals in management, all of whom having been sued herein as

22   DOES 1-20, had and continue to have, knowingly and intentionally created, or allowed to be

23   created, squalor housing in Johnston Park, and severe blight and toxic nuisance conditions in

24   Johnston Park. These Defendants have knowingly done so despite such actions being in direct

25   violation of the Municipal Code, State law, and State regulations; and Plaintiff and his neighbors

26   repeatedly complaining. These Defendants have engaged in conduct that was despicable,

27   oppressive and malicious; and betrayed their obligation and duty to the people of the City of

28   Sacramento. Such conduct was intended to intentionally harm Plaintiff and his neighbors. Also,

1   such conduct was intended to punish Plaintiff for: (1) not granting the City of Sacramento a free

2   easement in his land; (2) requesting the City of Sacramento pay for taking his and using his land;

3   and, (3) because Plaintiff complained about the squalor conditions in the park when they first

4   started.  Such conduct justifies an award of exemplary damages against these Defendants, in a

5   substantial sum appropriate to punish and make an example of them to other municipal

6   employees throughout the State of California.

7        36.    On May 23, 2021, at approximately 2:00 a.m., unidentified City of Sacrament Police

8   Officers Nos. 1-3, congregated at the entry of PLAINTIFF'S PARCEL.  The perimeter of this

9   land is fully fenced, and enclosed by a 6-foot high field fence and chain-link fence, with interior

10  barbed-wire lining the top.  The entry has a custom-made sliding gate door, with a heavy-duty

11  chain and pad-lock.  The officers were masked, unidentifiable, did not have their names visible,

12  and had a police K-9 dog with them.

13       37.    Plaintiff's neighbor heard the commotion and came out to see if he could help the

14  officers and show them how to access the area of City of Sacramento's Johnston Park, where the

15  officers indicated they wanted to go.  The area of Johnston Park where the officers intended

16  to go was readily accessible on the western border of PLAINTIFF'S PARCEL, and the open-

17  air eastern alley-way, immediately adjacent to the eastern border of PLAINTIFF'S PARCEL.

18       38.    The officers refused his input, cut the chain and lock, then broke the sliding door

19  open.  In so doing, they damaged Plaintiff's custom sliding door.  These officers and K-9 then

20  came onto claimant's property after breaking the entry gate, and used his land to get a closer view

21  of Johnston Park behind PLAINTIFF'S PARCEL.  These officers then drove their vehicle

22  around the interior perimeter of claimant's 2.35 acre parcel.  Plaintiff observed these tire treads

23  and drive patterns on his land.  After, the officers left claimant's property, they left the

24  gate unlocked and broken.  As a result, vagrants dumped trash inside PLAINTIFF'S PARCEL

25  and vandalized his landscaping.

26  ///

27  ///

28  ///

1

**EXHAUSTION**

2

39.    Exhaustion is not a prerequisite to an action under 42 U.S.C. section 1983.  To the

3

extent Plaintiffs make claims under state law, a timely claim has been submitted to Defendants,

4

and has been exhausted.

5

**FIRST CLAIM**

6

42 U.S.C. § 1983-Fourteenth Amendment Equal Protection

7

[Against All CITY DEFENDANTS and DOES 1-25]

8

40.    Plaintiff re-alleges and incorporates paragraphs 1-39, as though set forth herein.

9

41.    Under title 42, section 1983, PLAINTIFF asserts a violation of the Fourteenth

10

Amendment to the United States Constitution, as depriving him of equal protection of the laws.

11

CITY DEFENDANTS unfairly apply Municipal Code sections to keep squalor housing and

12

violent vagrant tenants from living in City Parks, and being *de facto* park residents, in wealthier

13

and non-Black and non-Brown neighborhoods throughout the City of Sacramento, but

14

intentionally treat Johnston Park as a squalor residence for violent vagrants, drug addicts, and

15

psychiatrically impaired residents to live in because the majority of people who live on Eleanor

16

Avenue are black or brown, and not politically connected like the residents who live near William

17

Land Park (Land Park District) or near East Portal Park or McKinley Park (East Sacramento

18

District).  CITY DEFENDANTS also unfairly refuse to apply its Municipal Code sections, which

19

bar squalor residences for vagrants to live in Johnston Park, when Plaintiff and his neighbors

20

complain MANY TIMES for direct enforcement, but they vigorously and robustly apply such

21

laws when neighbors to William Land Park, East Portal Park or McKinley Park make the same

22

complaints.  Plaintiff and his neighbors are treated differently than park neighbors in wealthier

23

non-black and non-brown neighborhoods.

24

42.    Disparate Impact-Suspect Class-Neighborhood Is Majority Black and Brown

25

(Strict Scrutiny)

26

a.    The racially disparate impacts of the City of Sacramento's previous Equal

27

Protection Clause violations has persisted because it continues to treat majority black and brown

28

neighborhoods differently, as is evidenced by it treating Johnston Park as squalor housing for its

10

1   unwanted vagrancy, and not equally allowing the same level of squalor housing and violent

2   vagrancy in other parks where it is majority not black and brown.  Evidence will clearly show

3   CITY DEFENDANTS will not tolerate squalor housing and violent vagrant tenants to live in

4   William Land Park, East Portal Park or McKinley Park; but they will allow such in Johnston

5   Park, despite such squalor conditions which violate the Municipal Code.  Such policy has a clear

6   disparate impact on PLAINTIFF and neighboring homeowners on Eleanor Avenue, who are

7   majority black and brown people.  As a result, CITY DEFENDANTS have an obligation to

8   eradicate those impacts, and treat Johnston Park, which serves majority black and brown residents

9   equally like Land Park, East Portal Park or McKinley Park.  *Swann v. Charlotte-Mecklenburg Bd.*

10  *of Ed.*, 402 U.S. 1, 15 (1971).  To do otherwise is a *per se* "vestige[] of state-imposed

11  segregation." *Id.*

12          b.      PLAINTIFF, and neighboring homeowners on Eleanor Avenue, are landowners

13  and/or residents within a majority black and brown neighborhood; and have complained many

14  times about the level of squalor housing and violent vagrancy on Johnston Park property over the

15  last four years, by tenants of CITY DEFENDANTS who have continuously lived in Johnston

16  Park. CITY DEFENDANTS have not taken any action to remove squalor housing from Johnston

17  Park property.  Defendants City of Sacramento Parks employees and Park Rangers pass by this

18  squalor housing on park property daily, fully know about it, and do nothing about it.

19  CITY DEFENDANTS, including City Park employees, Park Rangers, Police Department and

20  Fire Department are, and have been, at the squalor housing on Johnston Park either on a daily or

21  weekly basis, over the past 4+ years.  Park Rangers falsely claim the squalor housing is not on

22  Park property but rather adjacent private property.  That is not true, Plaintiff has shown a land

23  survey to City Parks officials indicating otherwise in 2016, and City of Sacramento Parks

24  employees know that.  CITY DEFENDANTS also falsely tell neighboring homeowners on

25  Eleanor Avenue that the squalor housing is not on Park property but rather PG&E property.

26          c.      CITY DEFENDANTS do not apply quality of life and City Park rules equally,

27  and consciously choose not to apply those laws to Johnston Park because the community it serves

28  is majority black and brown.  PLAINTIFF, and his neighbors, are entitled to have anti-vagrancy,

1  quality of life laws, and the Municipal Code applied equally to Johnston Park, as are applied in

2  other parks throughout the City of Sacramento which do not serve majority black and brown

3  neighborhoods.  CITY DEFENDANTS' policy of consciously allowing squalor housing and

4  vagrancy in Johnston Park over the last four years, has a disparate impact on black and brown

5  people who live in the neighborhood; and the City does this intentionally.  CITY DEFENDANTS

6  treat Johnston Park differently than other park property because it serves majority black and

7  brown people, in a *de facto* "separate but equal" policy, which is impermissible.  *Brown v. Board*

8  *of Ed. of Topeka, Shawnee County, Kan*., 347 U.S. 483, 495 (1954).

9       43.    Unique Treatment as a Class of One Claim

10            (Rational Basis Scrutiny)

11       a.    PLAINTIFF, as a "class of one," "alleges that []he has been intentionally

12  treated differently [by CITY DEFENDANTS] from others similarly situated and that there is no

13  rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562,

14  564 (2000).  The Supreme Court has stated "the purpose of the equal protection clause of the

15  Fourteenth Amendment is to secure every person within the State's jurisdiction against

16  intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its

17  improper execution through duly constituted agents."  *Id*.  When a municipality treats plaintiff

18  differently than "other similarly situated property owners," and acts in an "irrational and wholly

19  arbitrary" manner, then plaintiff's "traditional equal protection" rights are violated.  *Id*.

20       b.    Here, CITY DEFENDANTS intentionally failed to apply the Municipal Code

21  to Johnston Park when Plaintiff and his neighbors made their many complaints, but when

22  neighbors to William Land Park, East Portal Park or McKinley Park make the same complaints,

23  the Municipal Code is magically applied with vigor.  PLAINTIFF was, and continues to be, (1)

24  treated differently by CITY DEFENDANTS than other similarly situated persons, (2) the

25  difference in treatment was intentional, and (3) there was no rational basis for the difference in

26  treatment.  *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd*., 3 Cal.5th 1118, 1144

27  (2017).

28  ///

44.    As a direct and proximate result of Defendants' failure to equally apply laws, squalor housing and violent vagrancy conditions have existed in Johnston Park continuously since 2017.

45.    As a result of such conduct, plaintiff has been damaged.  Plaintiff, has been forced to install a costly gate, suffered toxic breathing impairment from sewage and burning in the park, inability to use his land, as intended, due to the nuisance created by Defendants on Johnston Park, and an inability to use Johnston Park which serves his community.

## SECOND CLAIM

42 U.S.C. § 1983-Fourteenth Amendment - State Created Danger-Deliberate Indifference

[Against CITY DEFENDANTS and DOES 1-25]

46.    Plaintiff re-alleges and incorporates paragraphs 1-45, as though set forth herein.

47.    Under title 42, section 1983, PLAINTIFF asserts a violation of the Fourteenth Amendment to the United States Constitution, as CITY DEFENDANTS have created the danger from violent vagrants, drug addicts, and psychiatrically impaired residents who are squalor residents in Johnston Park, because they intentionally allow them to live in Johnston Park, and are deliberately indifferent to the dangers such squalor residences pose to PLAINTIFF and his neighbors on Eleanor Avenue.  CITY DEFENDANTS, as part of a municipality, may be responsible for deliberate indifference when they disregard a known, or obvious consequence of their actions.  *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 410 (1997).

48.    PLAINTIFF has been physically attacked and threatened with violence numerous times from squalor residents living in Johnston Park, his property has repeatedly been vandalized and stolen by squalor residents living in Johnston Park, the air he breathes on his property is regularly heavily contaminated from trash, fires, continuously running generators and engines, and sewage reeking so as to create a clear public health danger in violation of a multiple of health quality laws.  Likewise, neighbors have been equally attacked and have had their property vandalized and stolen many times from the squalor residents living in Johnson Park.  All of the residents on Eleanor Avenue are afraid of Johnston Park's squalor residents, and are afraid to go into the park.

49.     Most of the squalor residents living in Johnston Park have noticeable and obvious psychiatric conditions and violent propensities.  The squalor residents living in Johnston Park live in fetid conditions without running water, sewage facilities, or electricity.  Johnston Park residents live in trash, open sewage, and are incubators for Nineteenth century diseases and a clear danger to PLAINTIFF when he is on his property.  The squalor residents routinely use PLAINTIFF's fence to hang tarps, dry their clothes and to support their fixed housing structures.  The City of Sacramento, its Park workers, Park Rangers, Police, and Fire Department are all well-aware of these unsanitary and dangerous living conditions, on City of Sacramento Park Property, and their impact to public health.

50.     PLAINTIFF and his Eleanor Avenue neighbors have called CITY DEFENDANTS many times to report the squalor, fires, trash, sewage, attacks, threats of violence, drug overdoses, used hypodermic needles, armed threats, explosions, and beatings.  CITY DEFENDANTS are ALL well-aware of these conditions and are deliberately indifferent to the dangers to plaintiff and his neighbors on Eleanor Avenue.  CITY DEFENDANTS treat Johnston Park as a third-world apocalypse.

51.     CITY DEFENDANTS have acted with deliberate indifference to the known and very obvious dangers to PLAINTIFF from its squalor housing, with violent vagrants, on Johnston Park property, and it has actual knowledge about the obvious dangers its squalor residents pose to PLAINTIFF and other residents on Eleanor Avenue.  *Patel v. Kent School Dist.*, 648 F.3d 965, 971, 972 (9th Cir. 2011); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996).  CITY DEFENDANTS' disregard for the safety of PLAINTIFF and his neighbors on Eleanor Avenue amounts to deliberate indifference.  *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989).  This is especially true because CITY DEFENDANTS' action of intentionally allowing its squalor housing, with known violent and psychiatric vagrants, on its Johnston Park property, to fester over the last 4+ years has created and exposed PLAINTIFF and his neighbors on Eleanor Avenue to dangers and health risks which they would not have faced otherwise.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).  The park has now become an incubator and habitat for squalor and vagrancy.

52.     CITY DEFENDANTS have taken, and continue to take, affirmative action to create squalor housing on Johnston Park property, are well-aware the majority of its tenants are violent vagrants with clear and obvious psychiatric conditions.  CITY DEFENDANTS have, and continue to allow it to exist in direct contravention of its own Municipal Code, and has been doing so for the last 4+ years.  Action from CITY DEFENDANTS exposed, and continues to expose, PLAINTIFF and his neighbors on Eleanor Avenue to dangers and health risks which they would not otherwise face.  CITY DEFENDANTS are well-aware of and have actual knowledge of the dangers from violence, theft, lack of sanitation, open sewage, trash, fires, explosions, psychiatric vagrancy, and extreme public health violations posed by its squalor tenants in Johnston Park.  CITY DEFENDANTS are clearly indifferent to the harm and danger this poses to Plaintiff and his neighbors on Eleanor Avenue and are deliberately indifferent to that danger.  *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021).  CITY DEFENDANTS have intentionally not applied Municipal Code sections 12.52.010-040, 12.72.020, 12.72.060, 12.72.090 and many other municipal, county and state laws related to camping, vagrancy, fires, trash, sewage, park operation, explosions, fires near natural gas storage facilities, public property, wood piles, etc., despite PLAINTIFF and many residents on Eleanor Avenue asking for such laws to be enforced in Johnston Park.

53.     As a direct and proximate result of Defendants' deliberate indifference, squalor housing and vagrancy conditions have existed continuously since 2017.

54.     As a result of such conduct, Plaintiff has been damaged.  Plaintiff has been forced to install a costly gate, suffered toxic breathing impairment from sewage and burning in the park, inability to use his land as intended due to the nuisance created by Defendants on Johnston Park, emotional distress, and an inability to use Johnston Park which serves his community.

///

///

///

///

///

**THIRD CLAIM**

42 U.S.C. § 1983-Procedural Due Process

(Failure to Follow Process and Failure to Give Notice)

[Against CITY DEFENDANTS, CITY OF SACRAMENTO and UNNAMED CITY OF

SACRAMENTO POLICE OFFICERS NOS. 1-3, and DOES 1-25]

55.     PLAINTIFF re-alleges and incorporates Paragraphs 1-54, as though set forth herein.

56.     Under title 42, section 1983, PLAINTIFF asserts violations of the 5th and 14th

Amendments to the United States Constitution, as depriving him of property, without due process

of law (procedural due process).

57.     Within constitutional "due process of law," PLAINTIFF has a constitutional right of

procedural due process for CITY DEFENDANTS to follow the process which exists (Municipal

Code sections 12.52.010-040, 12.72.020, 12.72.060, 12.72.090 and many other municipal, county

and state laws related to camping, vagrancy, fires, trash, sewage, park operation, explosions, fires

near natural gas storage facilities, public property, etc.), and to give any notice of its intentional

efforts to not apply such laws to the extent it creates a harm on its property which damages and

harms PLAINTIFF and neighbors on Eleanor Avenue.  The Constitution requires that government

action must be the result of adequate procedures.

58.     The Supreme Court has "emphasized time and again that the touchstone of due

process is protection of the individual against arbitrary action of government," specifically when

"the fault lies in a denial of fundamental procedural fairness." *County of Sacramento v. Lewis*

523 U.S. 833, 845–846 (1998).  PLAINTIFF has "the expectancy" CITY DEFENDANTS will

follow clear, unambiguous, and direct applicable laws as relates to its park property; and "this

expectancy is entitled to some modicum of due process protection. *Saleeby v. State Bar*, 39

Cal.3d 547, 564 (1985), citing *Perry v. Sindermann*, 408 U.S. 593, 599-603 (1972).

59.     In analyzing whether a "protectable interest exists," this court determines if such were

created and their dimensions [] defined by existing rules or understandings that stem from an

independent source such as state law—rules or understandings that secure certain benefits and

that support claims of entitlement to those benefits." *Id*.  at 564.  "A person's interest in a benefit

16

1    is a 'property' interest for due process purposes if there are such rules or mutually explicit

2    understandings that support his claim of entitlement to the benefit and that he may invoke at a

3    hearing." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

4        60.    PLAINTIFF, as a neighbor to Johnston Park and City taxpayer, has "a legitimate

5    claim of entitlement" as a matter of "unwritten common law," based on "the existence of rules

6    and understandings, promulgated and fostered by state officials, that may justify his legitimate

7    claim of entitlement to" CITY DEFENDANTS following applicable law as relates to its park

8    property.  PLAINTIFF's "subjective 'expectancy' is protected by procedural due process," since

9    his claim of such entitlement is "in light of the policies and practices of [the City of Sacramento].

10   *Id*.  City of Sacramento landowners and taxpayers are entitled to have the CITY DEFENDANTS

11   follow their own laws.  Such entitlement is a valid expectancy, and a property interest subject to

12   procedural due process rights.

13       61.    As an issue of first impression, PLAINTIFF advocates for his expectancy as a

14   property interest, under procedural due process, as follows:  landowners in a municipality, have

15   the property interest of an expectancy in the municipality to follow its clear and unambiguous

16   laws applicable in its parks, and on its park property, to the same extent the municipality has in

17   enforcing its laws and taxes on landowners in its municipality.  As a matter of natural law,

18   implicit in the consent of the governed, to be governed by CITY DEFENDANTS, is the

19   expectancy of the CITY DEFENDANTS to follow their own governing law, and to be equally

20   governed.

21       62.    PLAINTIFF is entitled to the procedural due process of "procedural fairness," which

22   compels CITY DEFENDANTS to follow its applicable procedure of laws, which includes its

23   clear and unambiguous laws applicable to Johnston Park.

24       63.    Likewise, at some point, CITY DEFENDANTS made a *de facto* determination to not

25   apply clear, unambiguous, direct and applicable laws to Johnston Park, and such determination

26   directly effects PLAINTIFF's property interest and the property interests of his neighbors on

27   Eleanor Avenue.  Neither PLAINTIFF or his neighbors on Eleanor Avenue received any notice of

28   such determination, and there was no public hearing where CITY DEFENDANTS made such

1    determination.

2    64.    CITY DEFENDANTS failed to follow the adequate procedures available or provide

3    any notice to PLAINTIFF or his neighbors on Eleanor Avenue.  Plaintiff is entitled to due process

4    of existing laws that are in place, and for them to be followed.  CITY DEFENDANTS failed to

5    follow their own procedure and laws.  Likewise, CITY OF SACRAMENTO and UNNAMED

6    CITY OF SACRAMENTO POLICE OFFICERS NOS. 1-3 failed to follow City laws and provide

7    notice and an opportunity to Plaintiff to be heard before destroying his property, trespassing onto

8    his land, and leaving the gate open.

9    65.    As a direct and proximate result of CITY DEFENDANTS' failure to follow the

10   process that was due and provide adequate notice procedures, squalor housing and vagrancy

11   conditions have existed continuously for the last 4+ years.

12   66.    As a result of such conduct, Plaintiff has been damaged.  Plaintiff has been forced to

13   install a costly gate, suffered toxic breathing impairment from sewage and burning in the park,

14   inability to use his land as intended, due to the nuisance created by Defendants on Johnston Park,

15   emotional distress, and an inability to use Johnston Park which serves his community.

16   **FOURTH CLAIM**

17   42 U.S.C. § 1983-Substantive Due Process

18   [Against CITY DEFENDANTS, CITY OF SACRAMENTO, UNNAMED CITY OF

19   SACRAMENTO POLICE OFFICERS NOS. 1-3, and DOES 1-25]

20   67.    PLAINTIFF re-alleges and incorporates Paragraph 1-66, as though set forth herein.

21   68.    Under title 42, section 1983, PLAINTIFF asserts violations of the 5th and 14th

22   Amendments to the United States Constitution, as depriving him of rights that are fundamental,

23   and "implicit in the concept of ordered liberty."  This includes the protection against "certain

24   arbitrary, wrongful government actions regardless of the fairness of the procedures used to

25   implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

26   69.    Plaintiff's Substantive Due Process rights are "intended to secure the individual from

27   the arbitrary exercise of the powers of government," and bars "certain government actions

28   regardless of the fairness of the procedures used to implement them…to prevent governmental

18

power from being used for purposes of oppression." *Daniels v. Williams,* 474 U.S. 327, 331–332(1986). "The touchstone of due process is protection of the individual against arbitrary action of government." *Id*.

70. CITY DEFENDANTS have acted in an arbitrary and capricious manner and engaged in conduct which shocks the conscience by knowingly and intentionally creating an apocalypse in Johnston Park. The facts as pled thus far unambiguously support this claim. Likewise, CITY OF SACRAMENTO and UNNAMED CITY OF SACRAMENTO POLICE OFFICERS NOS. 1-3's, arbitrary action of destroying Plaintiff's property, trespassing on his land and leaving the gate open is government power being used for purposes of oppression and in an arbitrary and capricious manner since such actions were not done with any rational basis nor are they done in wealthier neighborhoods in Sacramento.

71. As a direct and proximate result of CITY DEFENDANTS' failure to comply with PLAINTIFF's substantive due process rights, squalor housing and violent vagrancy conditions have existed continuously for the last 4+ years.

72. As a result of such conduct, Plaintiff has been damaged. Plaintiff has been forced to install a costly fence, suffered toxic  breathing impairment from sewage and burning in the park, inability to use his land as intended, due to the nuisance created by Defendants on Johnston Park, emotional distress, and an inability to use Johnston Park which serves his community.

**FIFTH CLAIM**

42 U.S.C. § 1983-Privileges and Immunities; 14th Amendment & Cal. Const. Art. I, §7, subd. (b)

[Against CITY DEFENDANTS and DOES 1-25]

73. PLAINTIFF re-alleges and incorporates Paragraph 1-72, as though set forth herein.

74. Under title 42, section 1983, PLAINTIFF asserts violations of the 14th Amendment to the United States Constitution, and California Constitution article I, section 7, subdivision (b) which bars CITY DEFENDANTS from granting one class of citizens privileges or immunities, while depriving those same privileges or immunities to PLAINTIFF.

///

///

Complaint for Damages, Declaratory & Injunctive Relief; Demand For Jury Trial

75.     The class of citizens (Upper Class) who live near, are neighbors to, and/or enjoy William Land Park, East Portal Park or McKinley Park have the privileges of CITY DEFENDANTS following the Municipal Code and regulations applicable to these parks, which prohibit squalor residences, violent vagrancy, and *de facto* psychiatric residences in the park. However, PLAINTIFF and his neighbors (Lower Class), are the class of citizens who live near, are neighbors to, and/or enjoy Johnston Park, and are not entitled to the same privilege as the Upper Class.  Namely, the privilege of CITY DEFENDANTS following the same Municipal Code and regulations applicable to Johnston Park.  Likewise, CITY OF SACRAMENTO and UNNAMED CITY OF SACRAMENTO POLICE OFFICERS NOS. 1-3'S, arbitrary action of destroying Plaintiff's property, trespassing on his land and leaving the gate open is a government action not done in upper class areas adjacent to William Land Park, East Portal Park or McKinley Park, but done to Plaintiff as a landowner in a "lower class" neighborhood, and such privilege of government upholding private property rights is not equally afforded to Plaintiff in his neighborhood.  Plaintiff is entitled to the same privileges of private property rights as is enjoyed by the upper class living in the City of Sacramento.

76.     Such class distinctions are strictly barred under the 14th Amendment to the United States Constitution, California Constitution article I, section 7, subdivision (b), and are an inherently repugnant act of CITY DEFENDANTS, CITY OF SACRAMENTO and UNNAMED CITY OF SACRAMENTO POLICE OFFICERS NOS. 1-3.  As a result of such conduct, Plaintiff has been damaged.

### SIXTH CLAIM

42 U.S.C. § 1983-First Amendment Retaliation)

[Against CITY DEFENDANTS and DOES 1-25]

77.     PLAINTIFF re-alleges and incorporates Paragraph 1-76, as though set forth herein.

78.     Under title 42, section 1983, PLAINTIFF asserts violations of the First Amendment to the United States Constitution, which bars CITY DEFENDANTS from retaliating against PLAINTIFF for his protected speech.

///

Complaint for Damages, Declaratory & Injunctive Relief; Demand For Jury Trial

79.  The First Amendment forbids government officials from retaliating against individuals for speaking out.  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  To recover under § 1983 for such retaliation, Plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.  *Blair v. Bethel School Dist*. (9th Cir. 2010) 608 F.3d 540, 543.

80.  Prior to June of 2018, Plaintiff provided CITY DEFENDANTS a copy of his topographic land survey which clearly set the borders of his property, with Johnston Park. In June of 2018, CITY DEFENDANTS dug a water line into and out of his parcel and ran it parallel with the Johnston Park pool.  Plaintiff called a meeting with CITY DEFENDANTS at his land, physically showed them the property line, objected and asserted his private property rights, and gave them another copy of the land survey.  At that time there was no housing or camping anywhere in Johnston Park.  In the months following this meeting, an occasional trailer or tent would be seen in Johnston Park

81.  In 2019, Plaintiff submitted a conditional use permit to CITY DEFENDANTS to build an assisted living facility for low-income seniors.  In response to Plaintiff's application the CITY DEFENDANTS demanded, for free, a grant of pipe easements for the pipes it improperly ran on PLAINTIFF's PARCEL.  Plaintiff rejected that demand and asserted his private property rights. Then CITY DEFENDANTS told Plaintiff Eleanor Avenue in front of his parcel by the gate was Johnston Park property, indicated it was not a public right of way, and that Plaintiff would have to "negotiate" with CITY DEFENDANTS to obtain access.  Plaintiff strongly objected, indicated he would not pay, and stated that he had a right of access as a public right of way in front of his property.  *McCandless v. City of Los Angeles* (1931) 214 Cal. 67, 71.

82.  From that date forward the squalor housing became worse and remained on Johnston Park property.  Plaintiff repeatedly called to complain about the squalor housing, trash, fires, open sewage, and toxic nuisances.  CITY DEFENDANTS told Plaintiff there had to be at least 8 people in an encampment for enforcement; then the story changed to rents are high they

Complaint for Damages, Declaratory & Injunctive Relief; Demand For Jury Trial

1    have no place to go; then it was Covid and the story was no enforcement during Covid; now the

2    latest version is falsely claiming that the squalor is not on Johnston Park property.  Plaintiff's

3    CUP application for his senior housing project was fully completed and ready for a hearing as of

4    January 2020, but CITY OF SACRAMENTO refused to set it for a hearing, despite his many

5    requests for one.

6        83.   Plaintiff engaged in constitutionally protected activity; as a result, he was subjected to

7    adverse action by the CITY DEFENDANTS of turning Johnston Park into squalor housing

8    immediately behind PLAINTIFF's PARCEL, and adverse action by CITY OF SACRAMENTO

9    for refusing to set his CUP for a hearing.  Such adverse actions were taken against Plaintiff to

10   punish him for not giving CITY DEFENDANTS free easements and complaining about squalor

11   and nuisances in Johnston Park, so as to chill a person of ordinary firmness from continuing to

12   engage in the protected activity; and there was a substantial causal relationship between the

13   constitutionally protected activity of not granting free easements and asserting private property

14   rights and the adverse action of CITY DEFENDANTS turning Johnston Park into an apocalypse.

15   CITY DEFENDANTS do not have any legitimate reason to not enforce the Municipal Code in

16   Johnston Park and turn it into a mecca for squalor housing, or to not set Plaintiff's CUP

17   application for a hearing, except to punish and crush Plaintiff.

18       84.   As a direct and proximate result of such conduct, Plaintiff has been damaged.

19                                   **SEVENTH CLAIM**

20                           42 U.S.C. § 1983-Fourth Amendment)

21        [Against CITY OF SACRAMENTO, UNNAMED CITY OF SACRAMENTO POLICE

22                         OFFICERS NOS. 1-3; and DOES 1-25]

23       85.   PLAINTIFF re-alleges and incorporates Paragraph 1-84, as though set forth herein.

24       86.   Under title 42, section 1983, PLAINTIFF asserts violations of the Fourth Amendment

25   to the United States Constitution, which bars CITY OF SACRAMENTO and UNNAMED CITY

26   OF SACRAMENTO POLICE OFFICERS NOS. 1-3 from unreasonable searches and seizures.

27   On May 23, 2021, UNNAMED CITY OF SACRAMENTO POLICE OFFICERS NOS. 1-3, cut

28   the lock and chain on his fenced property, damaged the custom-made sliding gate door, came

1    onto his property with their police vehicle, drove around his property, left the gate open, and the

2    property was damaged until Plaintiff could repair the gate and install a new chain and lock.

3         87.    There was no reasonable basis for such officers to destroy Plaintiff's property and

4    come onto his fully fenced and secured land.  Johnston Park was readily accessible from an

5    adjacent alley way less than 10 feet to the east of the entry to PLAINTIFF'S PARCEL, and a path

6    on the western border of PLAINTIFF'S PARCEL.

7         88.    As a direct and proximate result of such actions, Plaintiff has been damaged.

8                                   **EIGHTH CLAIM**

9                           42 U.S.C. § 1983-Fifth Amendment)

10        [Against CITY OF SACRAMENTO, UNNAMED CITY OF SACRAMENTO POLICE

11                        OFFICERS NOS. 1-3; and DOES 1-25]

12        89.    PLAINTIFF re-alleges and incorporates Paragraph 1-88, as though set forth herein.

13        90.    Under title 42, section 1983, PLAINTIFF asserts violations of the Fifth Amendment

14   to the United States Constitution, which bars CITY OF SACRAMENTO and UNNAMED CITY

15   OF SACRAMENTO POLICE OFFICERS NOS. 1-3 from taking Plaintiff's property for public

16   use without just compensation.  On May 23, 2021, UNNAMED CITY OF SACRAMENTO

17   POLICE OFFICERS NOS. 1-3, cut the lock and chain on his fenced property, damaged the

18   custom-made sliding gate door, came onto his property with their police vehicle, left the gate

19   open and Plaintiff's property was damaged until Plaintiff could repair the gate and install a new

20   chain and lock.  Plaintiff's property has been damaged and taken for public use and Defendants

21   CITY OF SACRAMENTO and UNNAMED CITY OF SACRAMENTO POLICE OFFICERS

22   NOS. 1-3 failed to provide just compensation.

23        91.    As a direct and proximate result of such actions, Plaintiff has been damaged.

24                                   **NINTH CLAIM**

25     (Inverse Condemnation: 42 U.S.C. § 1983-5th &14th Amendments; Cal. Const., art. 1, §19.)

26                        [Against CITY OF SACRAMENTO and DOES 1-25]

27        92.  Plaintiff re-alleges and incorporates paragraphs 1-91, as though set forth herein.

28   ///

Complaint for Damages, Declaratory & Injunctive Relief; Demand For Jury Trial

93. CITY OF SACRAMENTO's actions, determinations, and intent to locate squalor housing in Johnston Park with open sewage, trash, fires, etc., were all made for public use, are continuing actions, and were all a substantial cause of damage to PLAINTIFF and his neighboring parcel, and such damage was reasonably foreseeable.  (Cal. Const., art. 1, §19.) CITY OF SACRAMENTO knew its actions would cause Plaintiff harm, and had notice its actions would do so.

94. Where government requires an owner to suffer a permanent physical invasion of his or her property, regardless of how minor, it must provide just compensation. *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 538 (2005).  "[A] property owner acquires an irrevocable right to just compensation immediately upon a taking." *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2172 (2019).

95. CITY OF SACRAMENTO owns Johnston Park and intentionally created the public project of squalor housing on its park property for the last 4+ years.  This has created an open sewer, fires, trash, fetid conditions, generators continuously polluting exhaust, explosions, and vagrancy as discussed thus far.  This has damaged Plaintiff and his neighboring parcel and diminished the value of his land, dramatically.

96. Plaintiff's property "has suffered a direct and peculiar and substantial burden as a result of" the CITY OF SACRAMENTO's squalor housing project in Johnston Park that it intentionally created, and "he has [] been in effect singled out to suffer the detrimental environmental effects of the enterprise," such "may be a burden unfairly and unconstitutionally imposed on Plaintiff. *Varjabedian v. City of Madera*, 20 Cal.3d 285, 298 (1977).  Likewise, the CITY OF SACRAMENTO's "particularly oppressive acts" and unreasonable conduct were a "blight" or a "*de facto* taking" of Plaintiff's property, and "stigmatized it" so as to constitute a compensable taking of his property. *Klopping v. City of Whittier* (1972) 8 Cal.3d 39, 40.

97. Plaintiff claims "unique damage" to his property from CITY OF SACRAMENTO's squalor housing project in Johnston Park, and he "should be allowed to establish that [he] suffered a peculiar and substantial burden as a result of [his] proximity to [this housing project]," and, "compensation must be rationally related to the degree of harm suffered and will not be

24

1    dependent upon an arbitrary standard that is tied to a physical appropriation or chance location of

2    plaintiff'[s] property." *Harding v. State of California ex rel. Dept. of Transportation* (1984) 159

3    Cal.App.3d 359, 367.

4        98.  The cost of damage suffered by Plaintiff can be better absorbed by taxpayers as a

5    whole, with less hardship, than if absorbed by plaintiff alone.  Plaintiff receives no benefits

6    (offsetting or otherwise) from the CITY OF SACRAMENTO's squalor housing project which is a

7    public improvement on public property.  This *de facto* housing project is intentionally designed

8    and supported by CITY OF SACRAMENTO to house homeless people, drug addicts, and

9    psychiatric residents of the City of Sacramento in squalor conditions.

10        There is no feasible alternative with less risk of damage to Plaintiff's property.

11    Plaintiff's damage is not a normal incident to property ownership, and if uncompensated, Plaintiff

12    will contribute more than his fair share to the public undertaking.  Housing homeless people, drug

13    addicts, and psychiatric residents of the City of Sacramento, is a cost the City of Sacramento must

14    pay, not Plaintiff.  CITY OF SACRAMENTO's above acts and/or omissions, as deliberately

15    planned and carried out by it, proximately caused direct physical damage to be suffered by

16    Plaintiff.  As a direct and proximate result of such conduct, Plaintiff has been damaged.

17                                        **TENTH CLAIM**

18                    (Dangerous Condition of Public Property - Gov. Code §§ 835 & 840.2.)

19        [Against CITY OF SACRAMENTO, MARIO LARA, CHRIS CONLIN, SHANNON BROWN,

20                                    and Does 1-25.]

21        99.  PLAINTIFF re-alleges and incorporates paragraphs 1-98 as fully set forth herein.

22        100.  CITY OF SACRAMENTO at all times owns, and is in full control over, its park

23    property identified as Johnston Park.  This includes the strip of Eleanor Avenue running through

24    the park.  The actual road from gate to gate on Eleanor Avenue, is park property as well, and City

25    of Sacramento officials have indicated it is not a public right of way and is an internal City Park

26    road, which is under City Park rules.  All of the claims related to Johnston Park, are for "property

27    of a public entity" which is owned and controlled by CITY OF SACRAMENTO.  Cal. Gov. Code

28    § 830 (c).

101. CITY OF SACRAMENTO employees Mario Lara, as the Director of City of Sacramento Parks Department, Shannon Brown, as an Interim Director of City of Sacramento Parks Department, and Chris Conlin, as the Assistant City Manager responsible for management of City Parks, for the City of Sacramento, and other CITY OF SACRAMENTO employees have intentionally, directly, and knowingly created the condition of squalor housing in Johnston Park, allowed toxic trash, open sewage, fires, explosions, etc…; have knowingly provided permanent housing to violent vagrants and have actual notice that the majority of their tenants living in this park have overt psychiatric conditions and drug addictions and are in desperate need of social services including psychiatric care and drug treatment.  CITY OF SACRAMENTO employees have directly told their squalor tenants in Johnson Park to dump their raw trash and sewage in front of Plaintiff's land.  The dangerous conditions in Johnston Park were, and continue to be, directly attributable wholly or in substantial part to negligence or wrongful acts of these CITY OF SACRAMENTO employees and such employees had and continue to have the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous conditions.  Further, these employees had and continue to have the authority and responsibility to take adequate measures to protect against these dangerous conditions at the expense of the CITY OF SACRAMENTO, and the funds and other means for doing so were immediately available to them, and they had actual or constructive notice of these dangerous conditions under Section 840.4 a sufficient time prior to the alleged injuries to have taken measures to protect against the dangerous conditions.  Cal. Gov. Code § 840.2.

102. The "dangerous conditions" in Johnston Park are conditions of that property which create a substantial risk of injury when PLAINTIFF's PARCEL is used with due care and in a manner in which it is reasonably foreseeable that it will be used.  Cal. Gov. Code § 840.2. Liability may be imposed for "dangerous conditions" of Johnston Park because defendants CITY OF SACRAMENTO, CITY DEFENDANTS, and their employees acted unreasonably in creating such "dangerous conditions," failing to remedy such "dangerous conditions," and/or failing to warn Plaintiff of such "dangerous conditions."  Cal. Gov. Code § 830, Law Revision Commission Comments.

103. The "dangerous conditions" need only be a danger that the law would redress if it were inflicted by a private person.

> "Adjacent property" as used in the definition of "dangerous condition" refers to the area that is exposed to the risk created by a dangerous condition of the public property. For example, the hazard created by a condition of public property may not be a hazard to persons using the public property itself, but may be a hazard to other property or to those using other property. A tree located on public property may have a decayed limb overhanging private property and creating a hazard to that property and the persons on it. Explosives on public property may create a hazard to a wide area of private property adjacent to the public property.

Cal. Gov. Code § 830, Law Revision Commission Comments.

104. CITY OF SACRAMENTO's "own property may be considered dangerous if it creates a substantial risk of injury to adjacent property or to persons on adjacent property." *Id.* PLAINTIFF's PARCEL directly abuts Johnston Park. Numerous fixed structured squalor residences, built by Johnston Park tenants, directly abuts PLAINTIFF's PARCEL rear property line, and attach to his fence.

105. These dangerous conditions in Johnston Park create a substantial risk of injury to Plaintiff since he has been attacked numerous times by Johnston Park squalor tenants, who have been armed with knives and a baseball bat. Additionally, Plaintiff has been attacked by a Johnston Park squalor tenant's pit bull dog and called CITY OF SACRAMENTO Animal Control. ALL of these instances were promptly reported to defendant CITY OF SACRAMENTO. Johnston Park squalor tenants regularly dispose of their used hypodermic needles, feces, urine, food waste, and all other waste on PLAINTIFF'S PARCEL and at the front of his land. This is also regularly reported to defendant CITY OF SACRAMENTO. The fetid conditions from Johnston Park squalor tenants at the rear property line of PLAINTIFF's PARCEL regularly make him nauseous, and Johnston Park squalor tenants continuously running generators and starting fires impair Plaintiff's ability to breath and enjoy the rear half and front of his parcel. The conditions of Johnston Park squalor tenants create major dangerous public health concerns to Plaintiff. Johnston Park squalor tenants regularly engage in fires, explosions from vehicle fuel tanks, and burn cars in the park. Johnston Park squalor tenants regularly engage in fires adjacent to a very large PG&E natural gas storage facility on the southern border of Johnston Park. A clear pattern of past injuries and risks of injuries is sufficient to establish a substantial risk of

1    injury.

2           106.  These dangerous conditions created reasonably foreseeable risks of the kind of

3    injuries Plaintiff suffered, and were the proximate cause of Plaintiff's injuries and damages.

4    These dangerous conditions were created by defendants CITY OF SACRAMENTO and its

5    employees who were acting within the scope of their employment, and arose when its public

6    property was used in a manner that was reasonably foreseeable based on their squalor housing in

7    Johnston Park.

8           107.  As a direct and proximate result of such actions, Plaintiff has been damaged.

9                                    **ELEVENTH CLAIM**

10                                    (Nuisance – Private)

11   [Against CITY OF SACRAMENTO, MARIO LARA, SHANNON BROWN, CHRIS CONLIN,

12                        CHURCH DEFENDANTS, PG&E, and Does 1-25.]

13          108.  Plaintiff re-alleges and incorporates paragraphs 1-107 as fully set forth herein.

14          109.  At all times below are the past and continuing nuisances, in which the CITY OF

15   SACRAMENTO, MARIO LARA, CHRIS CONLIN, SHANNON BROWN, CHURCH

16   DEFENDANTS, and PG&E have actual and/or constructive knowledge:

17               a.  Squalor housing, fetid conditions, open sewage, trash, stolen bicycles, stolen

18   property, cars, burned-out cars, open fires, burning cars, gas tank explosions, intravenous drug

19   use, drug sales, gas powered generators, toxic creosote logs, permanent fixed residential units not

20   to building code, violent vagrancy, all along the rear of PLAINTIFF'S PARCEL inside Johnston

21   Park, and along the rear corner and side of PLAINTIFF'S PARCEL outside of Johnston Park as

22   to defendants CITY OF SACRAMENTO, MARIO LARA, SHANNON BROWN, CHRIS

23   CONLIN, and CHURCH DEFENDANTS.

24               b.  Squalor housing, fetid conditions, open sewage, trash, stolen bicycles, stolen

25   property, cars, burned-out cars, open fires, burning cars, gas tank explosions, intravenous drug

26   use, drug sales, gas powered generators, toxic creosote logs, permanent fixed residential units not

27   to building code, violent vagrancy, along the front and west side of PLAINTIFF's parcel inside

28   Johnston Park, as to defendants CITY OF SACRAMENTO, MARIO LARA, CHRIS CONLIN,

1   SHANNON BROWN, and PG&E.

2        110.  Plaintiff and/or his neighbors have notified all Defendants of the damage caused by

3   the nuisances and requested abatement.  Defendants have refused, and continue to refuse to abate

4   the nuisances.  Such nuisances are a substantial factor and proximate cause in damaging, and

5   continuing to damage Plaintiff.  As a direct and proximate result of such actions, Plaintiff has

6   been damaged.

7                                    **TWELFTH CLAIM**

8                        (Nuisance – Public [Civil Code section 3493])

9   [Against CITY OF SACRAMENTO, MARIO LARA, SHANNON BROWN, CHRIS CONLIN,

10                   CHURCH DEFENDANTS, and PG&E, and Does 1-25.]

11       111.  PLAINTIFF re-alleges and incorporates paragraphs 1-110 as fully set forth herein.

12       112.  At all times below are the past and continuing public nuisances, in which the CITY

13   OF SACRAMENTO, MARIO LARA, CHRIS CONLIN, SHANNON BROWN, CHURCH

14   DEFENDANTS, and PG&E have actual and/or constructive knowledge:

15            a.  Squalor housing, fetid conditions, open sewage, trash, stolen bicycles, stolen

16   property, cars, burned-out cars, open fires, burning cars, gas tank explosions, intravenous drug

17   use, drug sales, gas powered generators, toxic creosote logs, permanent fixed residential units not

18   to building code, violent vagrancy, all along the rear of PLAINTIFF'S PARCEL inside Johnston

19   Park, and along the rear corner and side of PLAINTIFF'S PARCEL outside of Johnston Park as

20   to defendants CITY OF SACRAMENTO, MARIO LARA, SHANNON BROWN, CHRIS

21   CONLIN, and CHURCH DEFENDANTS.

22            b.  Squalor housing, fetid conditions, open sewage, trash, stolen bicycles, stolen

23   property, cars, burned-out cars, open fires, burning cars, gas tank explosions, intravenous drug

24   use, drug sales, gas powered generators, toxic creosote logs, permanent fixed residential units not

25   to building code, violent vagrancy, along the front and west side of PLAINTIFF's PARCEL

26   inside Johnston Park, as to defendants CITY OF SACRAMENTO, MARIO LARA, SHANNON

27   BROWN, CHRIS CONLIN, and PG&E.

28   ///

c. The above nuisance cause <u>special injury</u> to Plaintiff because his lot is physically closest to the nuisances described above and he directly sees, smells, breathes, and feels the overt physical effects from these nuisances like no other property owner.  Although the entire neighborhood is affected by these nuisances, Plaintiff is affected by being specially injured as set forth above due to the proximity of his lot.

113.  Plaintiff and his neighbors notified all Defendants of the damage caused by the nuisances and requested abatement.  Defendants have refused, and continue to refuse to abate the nuisances.  Such nuisances are a substantial factor in damaging, and continuing to damage Plaintiff.  As a direct and proximate result of such actions, Plaintiff has been damaged.

## THIRTEENTH CLAIM

Negligence

[Against CITY OF SACRAMENTO, MARIO LARA, SHANNON BROWN, CHRIS CONLIN and DOES 1-25]

114.  Plaintiff re-alleges and incorporates Paragraphs 1-113, as though set forth herein.

115.  Defendant CITY OF SACRAMENTO is a public entity vicariously liable for the following acts or omissions of its employees within the course and scope of their employment.  Cal. Gov. Code, §§ 815.2, subd. (a), 820, subd. (a).  Defendants MARIO LARA, SHANNON BROWN, CHRIS CONLIN, are liable for their negligence to the same extent as a private person.  Cal. Gov. Code, § 820, subd. (a).

116.  Defendants had a duty of due care to reasonably maintain Johnston Park in compliance with the clear and unambiguous rules applicable to the park as set forth in the Municipal Code and other quality of life and health codes, enforce all park rules, treat all parks equally, and to keep out squalor housing and prohibit vagrants, drug addicts, and psychiatrically impaired residents from permanently living there, and from its tenants doing the harmful actions alleged in earlier paragraphs.

117.  Defendants breached that duty when they unreasonably allowed squalor housing to exist and continue to exist in Johnston Park with all of its related repugnance, failed to enforce the Municipal Code, failed to enforce City Park rules, intentionally treated Johnston Park differently

1   than City Parks in Upper Class areas of Sacramento, and intentionally allowed the park to decay

2   into an apocalypse.

3       118.   As a proximate result of such breach, Plaintiff has been damaged from

4   DEFENDANTS' squalor tenants in Johnston Park as set forth in the preceding paragraphs.  Such

5   breach was a substantial factor causing physical, emotional and property damage to Plaintiff.

6       119.   As a proximate result of such negligent acts, Plaintiff has been damaged.  Such

7   damage is subject to proof at trial.

8                           **FOURTEENTH CLAIM**

9                        Negligence-Premises Liability

10              [Against PG&E, CHURCH DEFENDANTS, and DOES 1-25]

11      120.   Plaintiffs re-allege and incorporate paragraphs 1-119, as though set forth herein.

12      121.   Defendants PG&E and CHURCH DEFENDANTS had a duty of due care to

13   reasonably maintain their property to be free of squalor housing, violent vagrancy, and toxic

14   nuisances.  These defendants had, and continue to have, a duty to take precautions to prevent the

15   highly foreseeable harm caused by their violent and/or psychiatrically impaired tenants who live

16   on their property in squalor housing, from engaging in violent vagrancy on PLAINTIFF'S

17   PARCEL and against PLAINTIFF.

18      122.   Defendants PG&E and CHURCH DEFENDANTS have actual knowledge that the

19   occupants of their property are violent and have overt psychiatric conditions, and that they

20   physically harm neighbors.  As a result, they have a reasonable duty to take precautions as relates

21   to inhabitants of their land, and who use their land to harm and damage neighbors.  Likewise,

22   Defendants PG&E and CHURCH DEFENDANTS had and continue to have a duty to take

23   precautions to prevent open sewage, fires, fetid trash, burned out cars, explosions, and toxic

24   nuisances on their property.

25      123.   Defendants owe a duty in the management of their land to act as a reasonable person,

26   in view of the probability of injury to others outside their land.  *Sprecher v. Adamson Companies*

27   (1981) 30 Cal.3d 358, 371; Cal. Civil Code § 1714.

28   ///

124.   Defendant PG&E, as a public utility, with a natural gas storage facility adjacent to Johnston Park has a higher duty of due care to keep squalor housing with its related fires, a safe distance from its explosive gas storage locations.

125.   Defendants breached their duty when they intentionally, knowingly and purposefully allowed squalor housing, violent vagrancy and toxic nuisances to exist on its property and to have such residences as tenants on their property.  Defendants are well-aware of the conduct of their tenants and the continuing damage they have caused PLAINTIFF, PLAINTIFF'S PARCEL and neighbors on Eleanor Avenue.

126.   As a proximate result of such breaches, PLAINTIFF has been damaged from Defendants' squalor tenants on their property as set forth in the preceding paragraphs.  Such breach was a substantial factor causing physical, emotional and property damage to Plaintiff. Such damage is subject to proof at trial.

## FIFHTEENTH CLAIM

(Breach of Mandatory Duty - Gov. Code § 815.6)

[Against CITY OF SACRAMENTO, and Does 1-25.]

127.  Plaintiff re-alleges and incorporates paragraphs 1-126 as though set forth herein.

128.  Defendant CITY OF SACRAMENTO had, and continues to have, a mandatory duty to:

a.  Not allow any person to remain in Johnston Park if they fail to comply with all regulations set forth in the Municipal Code applicable to the park. (Municipal Code, § 12.72.020)

b.  Not allow any person to erect temporary structures in Johnston Park. (Municipal Code, § 12.72.060(f)).

c.  Not allow any person to dispose of trash in the park other than in a trash can, start or maintain fires in the park, drive vehicles in the park outside designated areas, or camp in the park without a permit.  (Municipal Code, § 12.72.060(S), (T), (V), (W)).

///

1            d.  Not allow any person to remain or loiter in Johnston Park before sunrise or

2 after sunset.  (Municipal Code, § 12.72.090(A)).

3            e.  Discharge sewage directly into the soil, the underground water table, or

4 otherwise contaminate, pollute, and/or cause a nuisance in Johnston Park.  Cal. Health & Saf.

5 Code, §§ 5410, subds. (a-f), 5411; State Water Resources Control Board, Waste Discharge

6 Regulation Order, 2006-0003, section C (1), (2).

7            f.  Not store flammable solids within 20 feet of a lot line or in a public area.  Cal.

8 Code of Regs., tit. 29, Part 9, § 3604.2.1.

9       129.  Defendant CITY OF SACRAMENTO has, and continues to, through its tenants

10 living in Johnston Park, discharge raw sewage from its tenants living in the park directly onto the

11 park soil.  Pursuant to Health and Safety Code sections 5410 subdivisions (a-f), and 5411

12 defendant CITY OF SACRAMENTO has, and continues to have, a mandatory duty to not have

13 its residents living in Johnston Park discharge sewage in the park resulting in contamination,

14 pollution, and/or a nuisance.

15       130.  Applicable Health and Safety Code sections are designed to protect against untreated

16 municipal sewage, and the resulting pollution, contamination, nuisance, and damage caused by

17 defendant CITY OF SACRAMENTO and its tenants living in Johnston Park.  Cal. Health & Saf.

18 Code, §§ 5410, subds. (a-f), and 5411.  Likewise, the above Municipal Code and State Regulation

19 sections are designed to protect against the toxic nuisances now in Johnston Park.

20       131.  Defendant CITY OF SACRAMENTO breached its mandatory duty by allowing its

21 tenants living in Johnston Park to discharge untreated sewage, oil, and fuel directly onto the

22 surface of Johnston Park, and engaged in the previously listed toxic nuisances.  CITY OF

23 SACRAMENTO has actual notice of this and it is open and obvious to any visual inspection of

24 Johnston Park.  Such breaches were, and continue to be a substantial factor in causing damage to

25 Plaintiff, his neighboring parcel and his water table and sub-surface water, and garden.

26       132.  Defendant CITY OF SACRAMENTO is strictly liable, and responsible for all

27 testing and cleanup costs to Johnston Park and Plaintiff's neighboring parcel caused by its

28 tenants' discharge of sewage, and the costs to clean up the toxic nuisances in Johnston Park.

1   Specifically, remnants from fires in the park, explosions from vehicle fuel tanks, and storage of

2   combustible fuels and chemicals.

3       133.   As a proximate result of such breaches, PLAINTIFF has been damaged from

4   Defendants' squalor tenants on their property as set forth in the preceding paragraphs.  Such

5   breach was a substantial factor causing physical, emotional and property damage to Plaintiff.

6   Such damage is subject to proof at trial.

7       **SIXTEENTH CLAIM**

8   (Declaratory Judgment)

9   [Against CITY OF SACRAMENTO, CHURCH DEFENDANTS and PG&E and Does 1-25.]

10      134.   Plaintiff re-alleges and incorporates paragraphs 1-133 as though set forth herein.

11      135.   Defendant CITY OF SACRAMENTO has not complied with its Municipal Code,

12  and continues to not comply with its Municipal Code as relates to Johnston Park; creates and

13  supports squalor housing in Johnston Park and uses Johnston Park as a *de facto* facility to house

14  City of Sacramento residents in need of psychiatric and/or drug addiction care.  Defendant CITY

15  OF SACRAMENTO has a $1.3 billion annual budget but uses Johnston Park as a free open-air

16  containment site for its unwanted drug addicts, psychiatric impaired residents, vagrants and

17  homeless residents, at the expense of a working class neighborhood and Plaintiff.

18      136.   An actual controversy has arisen and now exists between the parties relating to

19  Defendant CITY OF SACRAMENTO's non-compliance with its Municipal Code, applicable

20  Constitutional law, and various state-law claims, and the legal rights and duties of Plaintiff and

21  Defendant CITY OF SACRAMENTO as set forth in this complaint.

22      137.   A declaratory judgment is necessary in that Plaintiff contends and Defendant CITY

23  OF SACRAMENTO denies the following:  Johnston Park has been and continues to be in direct

24  violation of the Municipal Code for creating and supporting squalor housing in Johnston Park and

25  Johnston Park acts as a *de facto* facility to house City of Sacramento residents in need of social

26  services and/or psychiatric care.  28 USC § 2201(a) (Declaratory Judgment Act); Fed. R. Civ.

27  Proc. 57;  *Eastern Enterprises v. Apfel*, 524 U.S. 498, 521 (1998); *Bernhardt v. Los Angeles*

28  *County,* 339 F.3d 920, 929 (9th Cir. 2003).

138.  Plaintiff prays for declaratory judgment against Defendant CITY OF SACRAMENTO as follows:

a.  That the court declare the respective rights and duties of Plaintiff and Defendant CITY OF SACRAMENTO as relates Johnston Park being in direct violation of the Municipal Code for creating and supporting squalor housing on Johnston Park and Johnston Park acting as a *de facto* facility to house City of Sacramento residents in need of drug addiction and psychiatric care.

b.  This court order, subject to proof, Defendant CITY OF SACRAMENTO to allocate sufficient financial funds from its $1.3 billion annual budget to house and treat all the current residents living in squalor housing in Johnston Park and provide the necessary social services and psychiatric and/or drug addiction care to all of those people.  Alternatively, Plaintiff will seek an order for appointment of a receiver to seize the appropriate level of funds from the City of Sacramento's $1.3 billion annual budget to provide care for the people currently living in Johnston Park.

c.  This court order, subject to proof, Defendant CITY OF SACRAMENTO to strictly follow its Municipal Code as relates to operations of Johnston Park, and provide 24-hour on site Park Rangers for the next 10 years to strictly enforce the Municipal Code and all City Park rules in Johnston Park at all times, subject to third-party monitoring funded by Defendant CITY OF SACRAMENTO, and to confirm Johnston Park receives the same resources, upkeep and attention as that received by City Parks in Upper Class neighborhoods in the City of Sacramento, and continuing jurisdiction of this court to confirm compliance.

d.  That Plaintiff be awarded all of his costs, expenses, *pro se* attorney time at the prevailing market rate, and attorney's fees incurred herein.

e.  For such other relief as this court deems just and proper.

139.  CHURCH DEFENDANTS and PG&E have not complied with applicable law as relates to the condition of their property or curtilage for which they are responsible.  An actual controversy has arisen and now exists between these Defendants and Plaintiff, and their related legal rights and duties as set forth in this complaint.  A declaratory judgment is necessary in that

35

Plaintiff contends that Defendants' property and/or curtilage for which they are responsible are in violation of the law.  Plaintiff prays for declaratory judgment against these Defendants to make their property or curtilage for which they are responsible to be in full compliance with the law.

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1.  Damages of:  (a) diminished value; (b) expert costs; (c) surveyor fees; (d) perimeter fence costs; (e) lost profits from losing ability to build Plaintiff's planned assisted living facility for low-income seniors; (f) emotional distress related to the annoyance, inconvenience, discomfort, distress, and mental anguish as a result of the facts alleged in this complaint; (g) sliding gate, chain and lock replacement costs; (h) development costs to date for building assisted living facility for low-income seniors; (i) holding costs; (j) expenses; (k) maintenance and upkeep; (l) taxes.

2.  Damages of: (a) attorney's fees, (b) appraisal fees, (c) *pro se* attorney's fees at the prevailing market rate, and (d) other expert fees and all recoverable costs for the prosecution of this action, under Cal. Code of Civil Procedure sections 1036 and 1021.5, and other applicable federal authority.

3.  Damages of an order for abatement of nuisance, as for nuisance claims;

4.  Damages of both preliminary injunctive relief and permanent injunctive relief because unless Defendants are enjoined from continuing their conduct, Plaintiff will continue to suffer irreparable injury.  Plaintiff has no adequate remedy at law, and injunctive relief is authorized. Preliminary injunctive relief is necessary to avert the current and continuing harm to Plaintiff and his community on Eleanor Avenue.  Judgment of a permanent injunction barring the City of Sacramento from engaging in such impermissible conduct in the future.  *Bernhardt v. Los Angeles County,* 339 F.3d 920, 929 (9th Cir. 2003).  Plaintiff will seek a preliminary injunction at the soonest time possible.

5.  Damages of declaratory relief as set forth above.  Declaratory relief as to the past and continuing improper actions of the Defendants, its/their impermissible conduct and a declaration of the rights and other legal relations of the interested parties.  28 USC § 2201(a) (Declaratory Judgment Act); Fed. R. Civ. Proc. 57; *Eastern Enterprises v. Apfel*, 524 U.S. 498, 521 (1998);

1    *Bernhardt v. Los Angeles County,* 339 F.3d 920, 929 (9th Cir. 2003).

2    6.    Exemplary damages against Defendants MARIO LARA, SHANNON BROWN

3    CHRIS CONLIN and other additional unnamed City Park administrators and individuals in

4    management, all of whom having been sued herein as DOES 1-20;

5    7.    Prejudgment and post-judgment interest;

6    8.    Reasonable attorneys' fees, *pro se* attorney time, expert fees and all costs of litigation,

7    pursuant to 42 U.S.C. § 1988, and Cal. Code of Civil Procedure § 1021.5.  Party *pro se* attorney's

8    fees under *Leaf v. City of San Mateo* (1984) 150 Cal.App.3d 1184, 1189, and Cal. Code of Civil

9    Procedure sections 1036 and 1021.5, since a substantial benefit has been provided to the

10   community, and other applicable federal authority.

11   9.    Costs of suit; and,

12   10.   Such other relief as the Court deems just and proper.

13   **REQUEST FOR JURY TRIAL**

14   Plaintiff requests a jury trial.  Fed. R. Civ. Proc. 38(b).

17   LAW OFFICE OF EVAN C. NELSON

19   Dated:  November 11, 2021

20   Evan C. Nelson, Esq.
     *Attorneys for Plaintiff Daniel Alweiss*

Complaint for Damages, Declaratory & Injunctive Relief; Demand For Jury Trial