1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  DANIEL ALWEISS,                    No. 2:21-cv-02095-WBS-DB

13              Plaintiff,

14      v.                             ORDER RE: MOTION TO DISMISS

15  CITY OF SACRAMENTO; MARIO LARA;
    SHANNON BROWN; CHRIS CONLIN;
16  UNNAMED CITY OF SACRAMENTO
    POLICE OFFICERS 1-3; LARRY K.
17  JOYNER; ST. PAUL CHURCH OF GOD-
    CHRIST; FIRST STEP COMMUNITIES-
18  THE GROVE; PG&E; and DOES 1-25,

19              Defendants.

20

21                         ----oo0oo----

22          Plaintiff Daniel Alweiss brought this action against

23  the City of Sacramento (the "City"), various Sacramento Parks

24  Department and City officials, and other organizational and

25  individual defendants challenging, in primary part, defendants'

26  alleged failure to enforce camping, sanitation, and other

27  ordinances at a park adjacent to plaintiff's property.  (See

28

                              1

Compl. (Docket No. 1).)[1]  Plaintiff alleges that these failures
have enabled the development of an encampment of homeless
individuals in the park, in turn causing a decline in the value
of his property, preventing him from building an assisted living
facility for seniors, and leading to attacks by encampment
residents.  (Id. at ¶¶ 22-33.)  He brings eight claims under 42
U.S.C. § 1983, alleging a variety of constitutional violations,
and eight claims under California law.  (Compl.)  The City now
moves for dismissal of claims one (equal protection), two (state-
created danger), three (procedural due process), four
(substantive due process), five (privileges and immunities), six
(retaliation), and nine (inverse condemnation) in plaintiff's
complaint.  (Mot. (Docket No. 9-1).)

I.   Due Process & Privileges and Immunities Claims (Counts II-V)

     The court heard oral argument on plaintiff's motion
directly following argument on another case, Railroad 1900 LLC v.
City of Sacramento, 2:21-cv-1673 WBS DB, which has been related
to this one.  (See Docket Nos. 5, 18.)  Railroad 1900 presents
similar claims against the City, based primarily upon the same
alleged failure by the City to enforce state and local laws as
against homeless individuals near the plaintiff's property.  The
court today issued an Order in that case dismissing the
plaintiff's constitutional claims.  See 2:21-cv-1673, Docket No.
27 ("Railroad 1900 Order").

     The bulk of plaintiff's allegations in this case are in

---

     [1]   Defendant PG&E has since been dismissed from the action
pursuant to a stipulation by the parties.  (Docket Nos. 12-13.)

relevant respects identical to those presented in <u>Railroad 1900</u>.
He alleges that he owns property adjacent to Johnston Park, where
the City "has allowed squalor residential structures" to develop
and "ha[s] knowingly allowed . . . severe blight and nuisance
conditions" to form as a result of homeless individuals
inhabiting the park.  (Compl. at ¶¶ 16-17, 22.)  He further
alleges that he and his neighbors have notified city officials
about these issues and that the City has nonetheless failed or
refused to remediate them.  (<u>Id.</u> at ¶¶ 24, 26.)  Instead, he
alleges, the City has "allowed [the encampment] to exist in
direct contravention of its own Municipal Code."  (<u>Id.</u> at ¶ 52.)
More specifically, he alleges that city officials "have
intentionally not applied . . . municipal, county and state laws
related to camping, vagrancy, fires, trash, sewage, park
operation, explosions, fires near natural gas storage facilities,
public property, wood piles, etc., despite plaintiff and many
residents . . . asking for such laws to be enforced in Johnston
Park."  (<u>Id.</u> (capital typeface omitted).)  Accordingly, he
challenges the City's "intentional efforts not to apply such
laws" and contends that "Sacramento landowners and taxpayers are
entitled to have the City . . . follow [its] own laws."  (<u>Id.</u> at
¶¶ 57, 60.)

        These allegations make clear that, through this action,
plaintiff primarily challenges the City's alleged failure to
enforce state and local laws against the homeless individuals
residing in Johnston Park and their property.  However, as
explained in the court's <u>Railroad 1900</u> Order, a plaintiff lacks
standing to sue in federal court to challenge a city's failure to

1  enforce the law against others.[2]  See Allen v. Wright, 468 U.S.

2  737, 739-40, 754 (1984); Linda R.S. v. Richard D., 410 U.S. 614,

3  619 (1973); In re Att'y Disciplinary Appeal, 650 F.3d 202, 203-04

4  (2d Cir. 2011); Gutierrez v. City of Carson, LA 10-cv-7627 JAK

5  (CWx), 2011 WL 7129239, at *7 (C.D. Cal. Dec. 16, 2011).

6  Accordingly, to the extent that plaintiff's second, third,

7  fourth, fifth, and ninth claims in this action challenge the

8  City's alleged non-enforcement against other individuals, those

9  claims fail for lack of standing.

10        However, plaintiff's claims in this action differ from

11  those in Railroad 1900 in that beyond challenging the City's

12  alleged non-enforcement of laws in Johnston Park, plaintiff also

13  alleges that in June of 2018, City officials trespassed onto and

14  began digging on his property to install new water lines, without

15  his permission.  (Compl. at ¶ 18.)  He alleges that in April of

16  2019, in response to his objections to the trespass and digging,

17  the City asserted it already had other trespassing pipes running

18  through his property and demanded he grant it an uncompensated

19  easement for those pipes.  (See id. at ¶¶ 18, 20.)  Plaintiff

20  also alleges that, in May of 2021, three unidentified Sacramento

21  police officers cut a chain and lock that secured a sliding door

22  at an entrance of his property; damaged the door; drove onto his

23  property without his permission; and left the gate unlocked,

24  _____

25        [2]    Although lack of standing is not raised in the City's
    motion to dismiss, standing is essential to the existence of
26  subject matter jurisdiction, an issue which may be raised sua
    sponte.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at
27  any time that it lacks subject-matter jurisdiction, the court
    must dismiss the action.");  Snell v. Cleveland, Inc., 316 F.3d
28  822, 826 (9th Cir. 2002).

1  allowing "vagrants" to dump trash on his property and vandalize

2  his landscaping.  (Id. at ¶¶ 36-38.)

3          These allegations serve as partial bases for

4  plaintiff's third, fourth, and fifth claims.  (See id. at ¶¶ 64,

5  70, 75.)  And unlike the allegations pertaining to the alleged

6  non-enforcement of the law in Johnson Park, these challenge

7  alleged affirmative conduct by the City and its officials.  Thus,

8  to the limited extent that plaintiff's third, fourth, and fifth

9  claims challenge alleged conduct pertaining to trespasses onto

10  plaintiff's land by City officials, the cutting of his lock and

11  chain, and the damage to his gate, plaintiff has standing to

12  bring these claims.[3]  However, because no such allegations are

13  present in plaintiff's second and ninth claims, the City's motion

14  will be granted as to those claims.

15  II.  Equal Protection (Count I)

16          In this action, as in Railroad 1900, plaintiff alleges

17  that the City has violated his right to equal protection by

18  enforcing the relevant state and local laws in other parts of the

19  city while declining to do so near his property, thereby

20  selectively enforcing the laws in ways that discriminate against

21

22          [3]     In its motion, the City does not address these
   allegations in seeking dismissal of plaintiff's third, fourth,
23  and fifth claims.  (See Mot. at 9-13.)  Accordingly, its motion
   does not support dismissal of those claims, to the extent that
24  plaintiff has standing to bring them.
           The City also argues that plaintiff may not bring a
25  claim against it under the Privileges and Immunities Clause of
   Article IV of the United States Constitution.  (Id. at 12-13.)
26  However, plaintiff makes no such claim, but rather asserts a
   claim under the Fourteenth Amendment's Privileges and Immunities
27  Clause.  (Compl. at ¶¶ 73-76.)  Accordingly, the City's arguments
   on this issue are inapposite.
28

residents of poorer or less politically connected neighborhoods. (See Compl. at ¶ 41); Railroad 1900 Order, at 3-5.  In this case, however, plaintiff also alleges that the City has done so on a racially discriminatory basis based on a theory of disparate impact, alleging that a majority of the residents in plaintiff's neighborhood are "black or brown," whereas the City allegedly does enforce the laws in neighborhoods with other demographic compositions.  (Compl. at ¶ 41.)  Plaintiff further alleges that he is a "class of one" who has been singled out by the City for non-enforcement of the law near his property.  (Id. at ¶ 43.)

As explained in Railroad 1900, equal protection claims alleging selective and discriminatory enforcement of the laws may proceed where a plaintiff alleges that the defendant "decided to enforce the law against [the plaintiff]," but not against other similarly situated individuals, "on the basis of an impermissible ground such as race, religion or exercise of constitutional rights."  See Railroad 1900 Order, at 11-13; Lacey v. Maricopa Cnty., 693 F.3d 896, 922 (9th Cir. 2012) (quoting United States v. Kidder, 869 F.2d 1328, 1336 (9th Cir. 1989)) (alteration adopted); United States v. Armstrong, 517 U.S. 456, 464-65 (1996).  Such a claim will not lie, however, where a plaintiff does not allege that he has himself been the subject of the challenged enforcement.  See Railroad 1900 Order, at 12-13 (citing Lacey, 693 F.3d at 922; Allen, 468 U.S. 755).  Because plaintiff here has not alleged that he has been the subject of any enforcement by the City, he lacks standing to bring an equal protection claim premised upon selective enforcement.  See id.

Further, plaintiff's disparate impact theory of equal

protection liability fails for the additional, related reason
that he has not alleged that he is himself a member of the
protected class that is the subject of the alleged
discrimination.  Although plaintiff alleges that his neighborhood
is "majority black and brown" and has been designated for non-
enforcement on that basis, he does not allege that he is himself
"black [or] brown" and therefore a member of the asserted
protected class.  (See Compl. at ¶¶ 40-42); Warth v. Seldin, 422
U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged
injury sufficient to meet the 'case or controversy' requirement,
this Court has held that the plaintiff generally must assert his
own legal rights and interests, and cannot rest his claim to
relief on the legal rights or interests of third parties.").

Plaintiff's class-of-one theory also fails for the
additional reason that he does not allege that he is, in fact, a
class of one.  An equal protection claim based on a class of one
may lie "where the plaintiff alleges that [ ]he has been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564
(2000).  "Where a plaintiff is making a class-of-one claim, the
essence of the claim is that only the plaintiff has been
discriminated against, and therefore the basis for the
differential treatment might well have been because the plaintiff
was unique . . . ." Scocca v. Smith, 11-cv-1318 EMC, 2012 WL
2375203, at *5 (N.D. Cal. June 22, 2012) (emphasis added).

Here, plaintiff alleges that it is "[p]laintiff and his
neighbors" who have been treated differently from other

Sacramento residents by virtue of the alleged non-enforcement in Johnston Park, "which serves [plaintiff's] community." (Compl. at ¶¶ 43(b), 45 (emphasis added).)  The complaint thus alleges differential treatment not of plaintiff alone, but of the broader community surrounding the park.  Plaintiff's neighbors who also reside near the park and are subject to the same alleged harmful conditions are therefore "similarly situated" to plaintiff, yet plaintiff does not allege that he has been singled out for treatment different from them.  See Scocca, 2012 WL 2375203, at *5.  Because plaintiff does not allege that only he has been the subject of the alleged discrimination, his class-of-one theory of equal protection liability also cannot succeed.  See Del Rio v. Cnty. of Santa Barbara, 12-cv-5587 GW (AGRx), 2012 WL 13013247, at *5 (C.D. Cal. Aug. 30, 2012) (rejecting class-of-one claim where plaintiffs failed to allege that they alone were subjected to challenged conduct).

Therefore, plaintiff's first claim, alleging violation of equal protection, must also be dismissed.

III. Retaliation (Count VI)

Plaintiff's sixth claim alleges unlawful retaliation under the First Amendment.  (Compl. at ¶¶ 77-84.)  Specifically, plaintiff alleges that in March of 2019, after objecting to City employees trespassing onto and digging on his land, he applied for a conditional use permit to build "an assisted living facility for low-income seniors" on his property.  (Id. at ¶¶ 18-19, 80-81.)  He states that he subsequently refused to grant the City an uncompensated easement for pipes already running through his property.  (Id. at ¶ 20, 81.)  And he further alleges that,

based on this refusal and on his repeated complaints to the City about the conditions in Johnston Park, the City retaliated against him by refusing to process his conditional use permit application, including by setting it for a hearing.  (Id. at ¶¶ 82-83.)

Unlike plaintiff's allegation that the City retaliated against him by refusing to enforce state and local laws against homeless individuals in Johnston Park, this allegation does not suffer from the same standing defect because it does not challenge a failure by the city to enforce the law against others.  Accordingly, to the extent that plaintiff alleges the City retaliated against him by refusing to process his permit application, he has standing to bring his retaliation claim.

In its motion, the City argues that plaintiff's retaliation claim must fail for the separate reasons that he fails to (1) identify the constitutionally protected activity he engaged in that prompted the alleged retaliation or (2) allege facts plausibly suggesting that the City's inaction regarding his application was in response to that activity.  (Mot. at 14.) These arguments lack merit.  First, by providing allegations regarding the easement dispute and regarding plaintiff's complaints about Johnston Park directly before alleging that plaintiff "engaged in constitutionally protected activity," the complaint makes clear that the assertedly protected activity consists of plaintiff's alleged refusal to grant an uncompensated easement and complaints about the park.  (See Compl. at ¶¶ 79-83.)  Second, by alleging that the City declined to process an application to develop his property in retaliation for his

1    refusal to grant an easement for part of that same property, as

2    well as for his complaints about the City's handling of a park

3    directly abutting that property, plaintiff's allegations

4    plausibly suggest a connection between his actions and the City's

5    given the significant overlap in subject matter.

6    IV.  Identity of "City Defendants"

7              With respect to many of plaintiff's claims, the

8    complaint frequently uses the term "CITY DEFENDANTS" to describe

9    the entities or individuals plaintiff alleges are responsible for

10   the alleged acts and omissions challenged in the complaint.  (See

11   Mot. at 5, 12-13.)  The City argues that this term is

12   impermissibly vague because the complaint does not clarify to

13   whom the term refers.  (See id.)  The court agrees that this term

14   is likely inadequate to enable the entities and individuals

15   comprising "CITY DEFENDANTS" to adequately defend themselves in

16   this action.[4]

17             The portions of plaintiff's third, fourth, and fifth

18   claims for which plaintiff has standing do not rely on the term

19   "CITY DEFENDANTS" in alleging trespass and destruction of

20   plaintiff's property.  (See Compl. at ¶¶ 64, 70, 75.)

21   Accordingly, the use of "CITY DEFENDANTS" does not merit

22   _____

23        [4]  Plaintiff appears to acknowledge that the meaning of
     "CITY DEFENDANTS" is unclear but asserts that "this issue . . .
24   has been clarified in the meet and confer process."  (See Opp. at
     6 (Docket No. 14).)  However, on a motion to dismiss, the court
25   "may not consider any material beyond the pleadings," Lee v. City
     of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), save for
26   "documents attached to the complaint, documents incorporated by
     reference in the complaint, or matters of judicial notice,"
27   United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  It
     therefore cannot consider what may have occurred during the meet
28   and confer process in deciding the instant motion.

dismissal of plaintiff's third, fourth, or fifth claims.  The

portions of plaintiff's sixth claim alleging the City retaliated

by refusing to process his permit application, however, do rely

on the term "CITY DEFENDANTS," (see id. at ¶¶ 81-83), which

prevents the court from evaluating whether plaintiff has

adequately alleged a causal connection between his conduct and

the alleged retaliation.  See O'Brien v. Welty, 818 F.3d 920, 932

(9th Cir. 2016) (citation omitted); Blair v. Bethel Sch. Dist.,

608 F.3d 540, 543 (9th Cir. 2010).  Accordingly, the court will

dismiss plaintiff's sixth claim with leave to amend.

        IT IS THEREFORE ORDERED that defendants' motion to

dismiss be, and the same hereby is, GRANTED IN PART and DENIED IN

PART as follows:

- GRANTED as to plaintiff's first and second claims;

- GRANTED as to plaintiff's third, fourth, and fifth
  claims, to the extent that such claims challenge the
  City's failure to enforce state and local laws in
  Johnston Park; DENIED as to these claims in all
  other respects;

- GRANTED as to plaintiff's sixth and ninth claims.

Plaintiff has twenty days from the date of this Order to file an

amended complaint, if he can do so consistent with this Order.

Dated:  May 26, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE